**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA**

Case No. 4:26-cv-10040

NICOLE SOHN, LINDA BAGLEY-SOHN,
and BAGLEY-SOHN TRUST 04/23/2021,

     *Plaintiffs*,

v.

CITY OF KEY WEST,

     *Defendant*.

_____/

## COMPLAINT

1.     For many years, Key West has been known as a welcoming and inclusive community for all individuals, and particularly so for the LGBTQ+ community. To celebrate this fact, over a decade ago the City of Key West installed rainbow crosswalks at an intersection along iconic Duval Street.

2.     But last year Governor Ron DeSantis's administration mandated that all localities statewide remove colorful markings and artwork on crosswalks and sidewalks. Acceding to that demand, the City of Key West painted over its rainbow crosswalks under cover of darkness.

3.     To protest the crosswalks' removal, Plaintiffs Nicole "Coley" Sohn and Linda Bagley-Sohn painted twelve of the pickets on their home's picket fence in rainbow colors. Inspired by Plaintiffs, many other Key West residents also painted their picket fences in rainbow colors to join the protest.

4.     The City then censored Plaintiffs' colorful and peaceful protest by selectively enforcing its ordinance code against them, based on the content and viewpoint of their expression.

5.     The government "has no power to restrict expression because of its message, its ideas, its subject matter, or its content." *Police Dep't of Chicago v. Mosley*, 408 U.S. 92, 95 (1972). "Content-based laws—those that target speech based on its communicative content—are presumptively unconstitutional . . . ." *Reed v. Town of Gilbert*, 576 U.S. 155, 163 (2015).

6.     The City's selective enforcement of its ordinances against Plaintiffs' picket protest constitutes a content- and viewpoint-based restriction of Plaintiffs' constitutionally protected free expression. Plaintiffs bring this suit to vindicate their First Amendment rights and reaffirm Key West as the inclusive and neighborly place they know it to be.

## I.  PARTIES, JURISDICTION, AND VENUE

7.      Plaintiffs Nicole "Coley" Sohn and Linda Bagley-Sohn own a house in Key West's Historic District, where they live.

8.      Plaintiff Bagley-Sohn Trust 04/23/2021 is a trust that holds title to Ms. Sohn and Ms. Bagley-Sohn's house. Ms. Sohn and Ms. Bagley-Sohn are the trustees.

9.      Defendant City of Key West is a Florida municipality.

10.     This Court has jurisdiction under 28 U.S.C. §§ 1331 and 1343, as well as 42 U.S.C. §§ 1983 and 1988, because this action arises under the Constitution and laws of the United States.

11.     Venue is proper in this District under 28 U.S.C. § 1391(b) because the defendant resides here and a substantial part of the events giving raise to the claim occurred here.

## II.  FACTUAL ALLEGATIONS

### A.  Key West's Historic District Regulations

12.     Key West's Historic District encompasses about 800 acres in the City's Old Town, including Plaintiffs' home.

13.     The City's Ordinance Code provides that, in general, structures (including fences) in the Historic District must comply with design guidelines promulgated by the City's Historic Architectural Review Commission (HARC).

14.     The HARC Guidelines provide that white is the only appropriate color for wood fences and gates.[1]

15.     HARC must approve the design and construction of new fences, as well as changes to existing fences. HARC has the authority to approve work that augments or preserves the Historic District's character and appearance, and likewise to *dis*approve work that does *not* augment or preserve the Historic District's character and appearance.

16.     Erecting a new fence or changing an existing fence *without* HARC approval is a violation of the City's Land Development Regulations, punishable as a civil infraction.

### B.  Key West's Rainbow Crosswalks, Their Removal, and Plaintiffs' Protest

17.     In 2015, the City of Key West installed rainbow crosswalks at the intersection of Duval and Petronia Streets, in the heart of Key West's Old Town.

18.     The rainbow crosswalks were installed to celebrate Key West's LGBTQ+

---

[1]   The Guidelines permit brighter "Caribbean" colors in the Bahama Village area, but Plaintiffs live outside that area.

community and Key West's tradition as an inclusive and welcoming place.

19. But last year, Governor DeSantis's administration mandated that all localities statewide remove colorful markings and artwork on crosswalks and sidewalks. By a 4–2 vote, the Key West City Commission voted to accede to the state's demands. Key West's rainbow crosswalks were painted over on the night of September 8 or 9, 2025.

20. To protest the City's removal of the rainbow crosswalks, later in September Plaintiffs painted in rainbow colors six of the pickets on the white picket fence in front of their house along Fleming Street, and six of the pickets on the side of their house along Frances Street:

 

21. Plaintiffs' rainbow picket display conveyed a particular message: a political protest against the removal of the rainbow crosswalks. Painting their pickets was itself a key component to communicating that message.

22. Plaintiffs' display inspired other Key West locals to similarly paint their own pickets in rainbow colors, joining in the protest and expressing community solidarity against the government's actions. More than 50 rainbow picket displays have been painted in the City's Historic District since the crosswalks' removal.

**C. The City's Selective Enforcement Against Plaintiffs' Display**

23. Plaintiffs' and their fellow protesters' displays prompted complaints from certain individuals who disapproved of the protest's message.

24. In particular, on December 19, 2025, Penny Walker Pourciau emailed the City to complain that Plaintiffs' display violated the HARC Guidelines. On information and belief, Ms. Walker Pourciau and her husband Jules Pourciau's social media pages include anti-gay posts.

25. The next day, December 20, 2025, a City code compliance officer left a "Good

Neighbor Courtesy Notice" on Plaintiffs' fence gate, notifying them that the officer observed a code violation and requesting voluntary compliance.

26.     The Courtesy Notice stated: "Please return picket fence to HARC approved color or contact HARC to apply for and obtain HARC approval for rainbow painted pickets."

27.     On December 29, 2025, Plaintiffs took the City up on its offer to submit their rainbow display for HARC approval, applying for a permit as instructed by City staff.

28.     On February 5, 2026, Plaintiffs received a "Notice of Code Violation" from the City, notifying them that their property was in violation of the code because the rainbow-painted pickets did not comply with the HARC Guidelines and therefore required HARC review and approval, and further informing them that the investigation began with Ms. Walker Pourciau's email complaint.

29.     The Notice of Code Violation gave Plaintiffs 30 days to take corrective action or the matter would be referred for an administrative hearing.

30.     The Notice further provided that failure to correct the violation may result in a fine of up to $250 per day.

31.     On February 24, 2026, Plaintiffs again applied for HARC review of their display.

32.     To date, Plaintiffs have received no notice of any action on their applications for HARC review and approval.

33.     And on March 25, 2026, the code compliance officer informed Ms. Sohn that if the display was not removed by the next day, Plaintiffs would incur a $250 fee.

34.     The next day, March 26, 2026, facing monetary sanction, Plaintiffs removed their rainbow display by painting their twelve pickets white.

35.     Plaintiffs are not alone. The City has commenced code enforcement against most, if not all, of the 50+ rainbow picket displays in the Historic District. As a result of the City's enforcement, the vast majority of the rainbow displays have now been painted over.

**D.  The City's Failure to Enforce the Regulations Against Other Violations**

36.     While the City eagerly enforced its Historic District regulations against Plaintiffs' colorful protest, it has chosen *not* to cite noncompliant properties that express different messages.

37.     Indeed, numerous fences and other exterior structures in the Historic District are out of compliance with the same HARC Guidelines cited against Plaintiffs, but these other violations have not faced enforcement.

38.     This non-compliance is as wide-ranging as it is well-known to the City; selective enforcement against rainbow pickets has been an ongoing topic of discussion, debate, and public comment at both City Commission and HARC meetings dating back to November 2025.

39.     On February 9, 2026, one resident sent the Mayor and City Commissioners a public comment that was entered into the record and discussed during the February 11, 2026, City Commission meeting. In his comment, the resident exclaimed:

> [T]he City is ALREADY selectively enforcing HARC guidelines where rainbow pickets are involved . . . . [A] very brief walking tour of the historic district will reveal non-compliant yellow doors and shutters at 718 Southard; a blue entrance door at 806 Ashe (next to a Ceramic Star for Historic Preservation); pink shutters at 722 Ashe (also next to a Ceramic Star for Historic Preservation); an orange entrance door at 1024 Grinnell; and a purple entrance door at 1022 Catherine. In fact, one of our current HARC commissioners lists on her business website the work her firm did for the historic Coffee Mill. They proudly display photos of a RED fence, yellow trim, and blue shutters – all non-compliant in the historic district. The owner of 810 Georgia Street – the vocal proponent of slavish adherence to exclusively historic colors in the historic district – has non-compliant, purple shutters on his house in the Meadows. . . . [T]he[] fact that they exist in the historic district smacks of uneven administration of HARC rules.

40.     During the February 11 City Commission meeting, recognizing that the City was selectively enforcing against rainbow pickets, one commissioner proposed pausing prosecutions while the City considered changing the HARC Guidelines. This pause was rejected by the City's attorney at the meeting, and the Commission took no action to cease selective enforcement.

41.     Later that month, at HARC's February 24, 2026, meeting, one HARC commissioner admitted that his own iron railing violated the HARC Guidelines—but he had not been cited.

42.     After calling the selective enforcement against rainbow-colored fences "Kafkaesque," the HARC commissioner derided the enforcement process: "We cherry pick what's suitable for certain situations. . . . We have not used the[] [HARC] Guidelines . . . as absolute, mandatory; we look at each situation as it comes along and make a decision."

43.     Indeed, on information and belief, the *only* fence- and gate-color violations the City has cited in recent years have been Plaintiffs' and their co-protestors' rainbow displays.

44.     Below are a few of the non-white wooden fences and gates that, on information and

5

belief, the City has evidently chosen *not* to cite, despite evidently also violating the HARC Guidelines:

  

  

  

 



 

45.     From left to right and top to bottom, these photographs show:

    a.   An artistic red picket with varicolored items affixed to it at 1113 Varela Street.

    b.   A blue gate at 908 Winsor Lane.

    c.   Another blue gate at 912 Winsor Lane.

    d.   Yet another blue gate at 719 Catherine Street.

    e.   Still another (grey-) blue gate at 801 Fleming Street.

    f.   A yellow peace sign (expressing a pro-peace message) and multicolored flowers painted on a gate at 317 Amelia Street.

    g.   A red picket fence and gate at 916 Pohalski Street.

    h.   A grey picket fence with a large red wooden heart built into it (expressing a message of love) at 724 Fleming Street.

    i.   Yellow and black pineapples (expressing a message of hospitality) painted on a gate at 827 Fleming Street.

    j.   Dark-colored pickets and gate at 320 Truman Avenue.

    k.   A dark green gate at 1121 Watson Street.

    l.   A pink picket fence at 1000 Eaton Street.

    m.   A teal picket gate at 715 Olivia Street.

    n.   A pink picket fence and gate at 902 Olivia Street.

46.     Emphasizing how the City has selectively targeted Plaintiffs' and other similar rainbow-picket protests, the City cited a rainbow picket display that Plaintiffs themselves painted

for the owner of 902 Olivia Street; the homeowner then removed the rainbow after being cited. But the City *chose not to cite* the nonconforming pink pickets at the very same property, as displayed in the photograph above.

47.   The City's selective enforcement is indicated not just from these evidently nonconforming picket fences, but also from what, on information and belief, are other exterior violations (depicted below, from left to right and top to bottom):

a.   Two roosters (a symbol of Key West) painted on a blue door at 723 Thomas Street. The HARC Guidelines provide that appropriate door colors are white, black, red, dark green, and natural finished wood.

b.   A blue masonry wall, wrought-iron fence, and gates at 1211 Catherine Street. The HARC Guidelines provide that appropriate masonry wall colors are white, beige, and gray, and appropriate wrought-iron fence and gate colors are dark green and white.

c.   A bright green masonry wall at 1019 Grinnell Street. The HARC Guidelines again provide that appropriate masonry wall colors are white, beige, and gray.

d.   An unfinished cinderblock wall at 624 Ashe Street. The HARC Guidelines prohibit unfinished cinderblock walls.

e.   A fence at 409 Frances Street that is over four feet tall and includes horizontal boards. The HARC Guidelines permit fences only up to four feet tall along property frontages, and prohibit non-vertical fencing.

f.   A chain link fence at 813 Eaton Street. The HARC Guidelines prohibit chain link fencing.

g.   A hand-painted sign asserting "not all who wander are lost" affixed to a picket fence at 910 United Street, right next to a rainbow display. The HARC Guidelines require HARC approval of all such signs; Page 1 of the Guidelines declares that signs "are a primary concern of the guidelines," and that "HARC approval MUST be secured on . . . [i]nstallation of signs[.]"












## CLAIM FOR RELIEF

### First Amendment Content and Viewpoint Discrimination
### (42 U.S.C. § 1983)

48. Plaintiffs reallege and incorporate by reference all prior paragraphs of this Complaint.

49. The First Amendment prohibits government officials from targeting speech based on its communicative content. *Reed*, 576 U.S. at 163 (2015). Such "content-based laws" are presumptively unconstitutional. *Id.*

50. Viewpoint discrimination is an "egregious form of content discrimination" and is also "presumptively unconstitutional." *Rosenberger v. Rector & Visitors of Univ. of Va.*, 515 U.S. 819, 829–30 (1995).

51. Plaintiffs' rainbow picket display was expression subject to First Amendment protection.

52. The City selectively and arbitrarily enforced its Historic District regulations against Plaintiffs because of the communicative content and viewpoint of their rainbow display.

53. The City has not enforced its Historic District regulations against others similarly situated whose violations have different communicative content and viewpoint from Plaintiffs.

54. The City has no legitimate, content-neutral justification for selectively punishing Plaintiffs for their expression.

55. The City's selective and arbitrary enforcement was the result of an official policy, practice, or custom of the City, including a pattern of enforcement that was so persistent, widespread, or repetitious that the City's policymakers either knew or should have known of it.

56. The City's restrictions on Plaintiffs expression have caused, and will continue to cause, Plaintiffs irreparable harm, including chilling their constitutionally protected speech and expression.

57. The City's enforcement of its Historic District regulations also caused Plaintiffs to suffer damages, including the cost of removing their rainbow display to avoid incurring fines.

58. The First Amendment categorically forbids the City's content- and viewpoint-based restrictions on Plaintiffs, and therefore the City's actions to enforce the Historic District regulations against Plaintiffs violated their rights under the First and Fourteenth Amendments.

**REQUEST FOR RELIEF**

Wherefore, Plaintiffs respectfully request that the Court enter judgment in their favor and:

A. Declare the City's enforcement of the Historic District regulations against Plaintiffs' rainbow picket display to be unconstitutional in violation of the First Amendment;

B. Enjoin the City from taking any action to enforce the Historic District regulations against Plaintiffs for a rainbow picket display;

C. Award Plaintiffs no more than twenty dollars in nominal damages and compensatory damages for the cost of removing their rainbow picket display and applying for HARC approval;

D. Award Plaintiffs reasonable attorneys' fees and costs; and

E. Grant any other relief the Court deems just and proper.


Respectfully submitted May 7, 2026,

/s/ *Nicholas L.V. Warren*
Nicholas L.V. Warren (FBN 1019018)
Samantha J. Past (FBN 1054519)
Michelle M. Morton (FBN 81975)
Daniel B. Tilley (FBN 102882)
**ACLU Foundation of Florida**
4343 West Flagler Street, Suite 400
Miami, FL 33134
(786) 363-1769
nwarren@aclufl.org
spast@aclufl.org
mmorton@aclufl.org
dtilley@aclufl.org

Reid Levin (FBN 1038933)
**Reid Levin, PLLC**
P.O. Box 880682
Boca Raton, FL 33488
(561) 866-6089
reid@reidlevinpllc.com

Ashley N. Sybesma (FBN 22059)
Wayne LaRue Smith (FBN 31410)
**The Smith Law Firm**
509 Whitehead Street
Key West, FL 33040
(305) 296-0029
ashley@thesmithlawfirm.com
wsmith@thesmithlawfirm.com

*Counsel for Plaintiffs*