UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 26-cv-10040-JEM

NICOLE SOHN, et al,

      Plaintiffs,

vs.

CITY OF KEY WEST,

      Defendant.

_____/

## DEFENDANT'S MOTION TO DISMISS COMPLAINT

Defendant, CITY OF KEY WEST ("City"), by and through its undersigned counsel, requests entry of an order dismissing the Complaint (ECF No. 1) filed by the Plaintiffs, NICOLE SOHN ("Sohn"), LINDA BAGELY-SOHN ("Bagley-Sohn") (collectively, "Homeowners"), and BAGLEY-SOHN TRUST 04/23/2021 ("Trust"), and in support states:

### I. INTRODUCTION

1.  The Plaintiffs own a home in the City's historic district. To protect the historic structures in the Historic District, the City has adopted designs guidelines that restrict and regulate the types of changes that can be made such historic structures. One such guideline is that wood picket fences typically must be painted white. After the Plaintiffs painted six pickets on their white fence in rainbow colors without prior approval, the City issued a courtesy notice and then a notice of code violation advising the Plaintiffs that the change violated the design guidelines. The Plaintiffs subsequently brought the fence into compliance, and no fines or penalties were ever assessed against the Plaintiffs. Based on the courtesy notice and notice of violation, the Plaintiffs

1

assert a single claim under the First Amendment against the City.   The Plaintiffs' Complaint must be dismissed because the mere issuance of a courtesy notice and a notice violation, without more, does not rise to the level of a First Amendment violation.

## II. ALLEGED FACTS

2.      The City is a Florida municipality.   ECF No. 1 at ¶ 7.

3.      The Homeowners, through the Trust, own a house in the City's Historic District. ECF No. 1 at ¶¶ 7-8.

### The City's Historic Structures Architectural Regulations

4.      As alleged in the Complaint, "[t]he City's Ordinance Code provides that, in general, structures (including fences) in the Historic District must comply with design guidelines promulgated by the City's Historic Architectural Review Commission (HARC)."   ECF No. 1 at ¶ 13.

5.      Both the City's Comprehensive Plan and Code of Ordinances prohibit, with respect to historic structures, the "[i]ntroduction of visible, audible, or atmospheric elements that are out of character with the property or significantly alter its setting."   KEY WEST, FLA. CODE § 102-6(3); KEY WEST, FLA. COMP. PLAN POLICY 5-1.9.2.

6.      To implement these policies and regulations, the City created the HARC with the "authority to disapprove work which does not augment or preserve the character and appearance of the historic districts" and "to approve work which is deemed to augment or preserve the character and appearance of the historic districts."   KEY WEST, FLA. CODE §§ 90-126, -130. -139

7.      The City also adopted the Historic Architectural Commission Design Guidelines ("HARC Guidelines") which are "intended to preserve and protect the architectural environment

and unique character of the historic neighborhoods of the Key West Historic District."   KEY WEST, FLA. CODE § 90-142; KEY WEST, FLA. HARC ARCH. GUIDELINES, Introduction.

8.      Per the HARC Guidelines, "changes to existences fences must be approved and permitted."   KEY WEST, FLA. HARC ARCH. GUIDELINES at 35, 41; ECF No. 1 at ¶ 16 ("Erecting a new fence or changing an existing fence without HARC approval is a violation of the City's Land Development Regulations….").

9.      "The traditional color for wood fences and gates is white."   KEY WEST, FLA. HARC ARCH. GUIDELINES at 35, 41; ECF No. 1 at ¶ 14 ("The HARC Guidelines provide that white is the only appropriate color for wood fences and gates.").

10.     Per section 102-94, "[n]o person shall cause alteration of any historic building unless such work has been authorized pursuant to the terms of article IV of [Chapter 102]."

### The City's Code Compliance

11.     Code compliance in the City is addressed in Article VI of the Code of Ordinances.

12.     A code enforcement proceeding is initiated by the code enforcement officer when, after identifying a potential code violation, provides notice to the alleged violator giving the person a reasonable time to correct the violation.   KEY WEST, FLA. CODE § 2-637.

13.     If the alleged violation is not corrected within the time specified for correction, the code enforcement may notify the special magistrate and request a hearing.   KEY WEST, FLA. CODE § 2-637(2).

14.     The code enforcement special magistrate has the same powers, duties and authority as stated in Chapter 162, Florida Statutes, including the authority to impose fines and liens.   KEY WEST, FLA. CODE § 2-634(c).

15. The special magistrate also has the power to, among other things, take testimony under oath and issue orders having the force of law commanding whatever steps are necessary to bring a violation into compliance.   KEY WEST, FLA. CODE §§ 2-635(3), (4).

16. If the special magistrate schedules a hearing, the special magistrate must "take testimony from the code enforcement officer and the alleged violator," and while the formal rules of evidence do not apply, "fundamental due process shall govern the proceedings."   KEY WEST, FLA. CODE § 2-640.

17. At the conclusion of the hearing, the special magistrate must "issue findings of fact based on the evidence of the record and conclusions of law and [must] issue an order affording the proper relief consistent with powers granted in this division."   KEY WEST, FLA. CODE § 2-641(1).

18. "The order may include a notice that it must be complied with by a specified date and that a fine may be imposed."   KEY WEST, FLA. CODE § 2-641(1).

19. However, a fine may not be imposed until the alleged violator fails to comply with the date for compliance set by the special magistrate.   KEY WEST, FLA. CODE § 2-643("The special magistrate, upon notification by the code enforcement officer that a previous order has not been complied with by the set time or upon finding that a repeat violation has been committed, may order the violator to pay a fine for each day the violation continues past the date set by the special magistrate for compliance.").

**The Plaintiffs Violate the HARC Guidelines**

20. In September 2025, the Plaintiffs "painted in rainbow colors six of the pickets on the white picket fence in front of their house along Fleming Street, and six of the pickets on the side of their house along Frances Street."   ECF No. 1 at ¶ 20.

4

21.     Based on the allegations in the Complaint, the Plaintiffs' conduct violated the HARC Guidelines because picket fences can only be painted white.   ECF No. 1 at ¶

22.     According to the Plaintiffs, their painting of the fence was a protest against the City Commission's vote "to accede to the state's demands" that "colorful marking and artwork on crosswalks and sidewalks," including rainbow crosswalks in the City, be removed.   ECF No. 1 at ¶¶ 19, 21.

23.     The Plaintiffs' painting of their fence prompted citizen complaints including on December 19, 2025, when "Penny Walker Pourciau emailed the City to complain that Plaintiffs' display violated the HARC Guidelines."   ECF No. 1 at ¶¶ 23, 24.

24.     On "December 20, 2025, a City code compliance officer left a 'Good Neighbor Courtesy Notice' on the Plaintiffs' fence gate, notifying them that the officer observed a code violation and requesting voluntary compliance."   ECF No. 1 at ¶ 25.

25.     "The Courtesy Notice stated: 'Please return picket fence to HARC approved color or contact HARC to apply for and obtain HARC approval for rainbow painted pickets.'"   ECF No. 1 at ¶ 26.

26.     The Plaintiffs claim that they twice sought HARC approval for their change to the picket fence, but the City never acted on the requests.[1]   ECF No. 27, 31, 32.

27.     On February 5, 2026, Code Enforcement Officer Erin Buechele provided the Plaintiffs a Notice of Code Violation advising them, that following a complaint, the Code

---

[1] The Plaintiffs' allegations are not correct.  As will be demonstrated through discovery, while the Plaintiffs submitted two permit applications, they were advised through the City's eTRACKiT system that "[t]his proposed scope of work does not comply with the current HARC guidelines and requires HARC Commission review," meaning that a HARC application (not a permit application) was required.   The Plaintiffs have never filed the required HARC application.

Enforcement Officer inspected the property and identified "unpermitted painting of Pickets at the subject property" and advised of a violation of Policy 5-1.9.2 regarding the "Introduction of visual, audible, or atmospheric elements that are out of character with a property or alter its setting."   ECF No. 1 at ¶ 28; Ex. A (1-29-26, Not. of Code Violation).[2]

28.   In terms of Corrective Action, the Notice of Code Violation stated, "PLEASE RETURN THE PAINTED PICKETS LOCATED ON THE FRONT GATE (FACING FLEMING ST.) AND SIDE GATE (FACING FRANCES ST.) TO THE HARC APPROVED COLOR (WHITE PAINT)."   Ex. A (1-29-26, Not. of Code Violation) at 1.

29.   The Notice of Violation further advised that, "Florida Statutes Chapter 162 and Key West Code of Ordinances Article VI authorize code enforcement proceedings" and that the Plaintiffs had 10 days "to take corrective action on the above-described violation(s)."   ECF No. 1 at 2.

30.   The Notice of Code Violation also advised that [i]f corrective action is not taken within the specified 10 days, this matter will be referred to The Special Magistrate for an administrative non-criminal hearing concerning the alleged violation(s)."   ECF No. 1 at 2.

---

[2]  The Court may consider the notice of violation because it is central to the Plaintiffs' claim against the City, is incorporated by reference in the Complaint, and is not subject to dispute.   *See Brooks v. Blue Cross & Blue Shield of Fla., Inc.*, 116 F.3d 1364, 1368-69 (11th Cir. 1997); *see also Edwards v. Dothan City Schs.*, 82 F.4th 1306, 1311 (11th Cir. 2023) ("[W]e will consider outside documents attached to a defendant's motion to dismiss when: (1) the plaintiff mentions the document(s) at issue in the complaint; (2) the document is central to the claim; and (3) the contents are not in dispute, i.e., the document's authenticity is not question.") (citing *Fin. Sec. Assurance, Inc. v. Stephens, Inc.*, 500 F.3d 1276, 1284 (11th Cir. 2007) (per curiam)).

31.     The Plaintiffs claim that "on March 25, 2026, the code compliance officer informed Ms. Sohn that if the display was not removed by the next day, Plaintiffs would incur a $250 fee." ECF No. 1 at ¶ 33.

32.     The unidentified code compliance officer statement – if accurate – would be a misstatement of the City Code.   As explained above, per the City Code, a fine may not be imposed until (1) the special magistrate conducts a hearing, finds a violation, and sets a date for compliance, and (2) only after the violator fails to comply with the date for compliance set by the special magistrate.   KEY WEST, FLA. CODE §§ 2-641(1), -643.

33.     The Plaintiffs brought the Property into compliance before any fines were imposed. ECF No. 1 at ¶ 34.

### III. MEMORANDUM OF LAW

In the Complaint, the Plaintiffs assert single claim for "viewpoint discrimination" against the City under the First Amendment alleging selective enforcement.   ECF No. 1 at ¶¶ 48-58.   The fundamental flaw in the Plaintiff's claim is that the issuance of a notice of violation without more does not rise to the level of a First Amendment violation.   A "*de minimis* inconvenience in the exercise of First Amendment rights" does not amount to an adverse action under the First Amendment. *Bennett v. Hendrix*, 423 F.3d 1247, 1253 (11th Cir. 2005), abrogated in part on other grounds by *Pearson*, 555 U.S. 223; Bethel v. Town of Loxley, 221 F. App'x 812, 813 (11th Cir. 2006) (holding that the plaintiffs "must show that the defendants' conduct resulted in something more than a 'de minimis inconvenience' to the exercise of their First Amendment rights.)

Courts have routinely held that the mere issuance of a notice of violation does not constitute a First Amendment violation.   For example, in *Frankel v. Town of Bay Harbor Islands*, the

plaintiff sued the Town under the First Amendment based upon its issuance of a notice of violation and courtesy notice for alleged code violations. No. 06-23109-CIV, 2007 WL 9709777, at *1-*2 (S.D. Fla. Apr. 16, 2007). This Court dismissed the complaint finding that the issuance of the notices would not "likely deter a person of ordinary firmness from exercising her/his First Amendment rights." *Id.* at *3. It noted that the notice "did not impose a fine but rather, informed Plaintiff that a civil fine would result if violations respecting the maintenance of rain gutters and the removal of a dead tree stump were not corrected," and the subsequent courtesy notice "did not impose a fine but merely notified Plaintiff about the need to repair rain gutters damaged by hurricanes." *Id.* This Court concluded that "[e]ven if these [n]otices were sent in retaliation as Plaintiff contends, the Court does not find an actionable claim because a person of ordinary firmness, when faced with the Notices, would not be deterred from exercising her/his First Amendment rights." *Id.*; s*ee Volk v. Heydt*, 1997 WL 27100 (E.D.Pa.1997) (finding that a First Amendment claim based on notices of violation was unfounded because the plaintiffs did not allege that any enforcement proceedings were instituted, and concluded "the mere fact that the [city] sent these letters to the Plaintiffs without taking further action, is not sufficient to constitute an 'adverse action' for purposes of a claim for retaliation.").

This Court's reasoning from *Frankel* applies here. The City's issuance of the courtesy notice and the notice of violation did not impose any fines on the Plaintiffs. Rather, they merely advised the Plaintiffs of the existence of a potential code violation. Moreover, the City's Code provides that a fine could not be levied until (1) after the Plaintiffs had a hearing before the special magistrate, (2) after the special magistrate found a code violation and set a date for compliance, and (3) after the Plaintiffs failed to come into compliance by the date set by the special magistrate.

8

Without more, the City's issuance of the courtesy notice and the notice of violation simply do not violate the First Amendment.   Under *Frankel*, such conduct does not constitute an adverse act under the First Amendment, a necessary prerequisite to state a valid First Amendment claim regardless of the theory asserted.

WHEREFORE, Defendant, CITY OF KEY WEST, requests entry of an order dismissing the Complaint (ECF No. 1) filed by the Plaintiffs, NICOLE SOHN, LINDA BAGELY-SOHN, and BAGLEY-SOHN TRUST 04/23/2021, together with such additional relief the Court deems just and proper.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on the 11th day of June 2026, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of records or pro se parties identified on the attached Service List in the manner specified, either via transmission of Notice of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

JOHNSON, ANSELMO, MURDOCH, BURKE,
PIPER & HOCHMAN, P.A.
*Counsel for Defendant City of Key West*
2455 East Sunrise Boulevard, Ste. 1000
Fort Lauderdale, FL 33304
Telephone: 954-463-0100

BY: */s/Hudson C. Gill*
      Hudson C. Gill
      Florida Bar No. 15274
      W. Hampton Johnson, IV
      Florida Bar No. 98607

**<u>SERVICE LIST</u>**

Nicholas L.V. Warren
ACLU Foundation of Florida
4343 West Flagler Street, Suite 400
Miami, FL 33134
*Counsel for Plaintiff*

Nicholas L.V. Warren, Esq.
Samantha J. Past, Esq.
Michelle M. Morton, Esq.
Daniel B. Tilley, Esq.
ACLU Foundation of Florida
4343 West Flagler Street, Suite 400
Miami, FL 33134
(786) 363-1769
nwarren@aclufl.org
spast@aclufl.org
mmorton@aclufl.org
dtilley@aclufl.org
*Counsel for Plaintiff*

Reid Levin, Esq.
Reid Levin, PLLC
P.O. Box 880682
Boca Raton, FL 33488
(561) 866-6089
reid@reidlevinpllc.com
*Counsel for Plaintiff*

Ashley N. Sybesma, Esq.
Wayne LaRue Smith, Esq.
The Smith Law Firm
509 Whitehead Street
Key West, FL 33040
(305) 296-0029
ashley@thesmithlawfirm.com
wsmith@thesmithlawfirm.com
*Counsel for Plaintiff*

10

Hudson C. Gill, Esq.
hgill@jambg.com
cardona@jambg.com
ostreumke@jambg.com
W. Hampton Johnson, IV, Esq.
whjohnson@jambg.com
mccarthy@jambg.com
Johnson, Anselmo, Murdoch, Burke,
Piper & Hochman, P.A.
2455 East Sunrise Boulevard, Ste. 1000
Ft. Lauderdale, FL 33304
954-463-0100
*Counsel for Defendant*

11