**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA**

Case No. 26-cv-10040-MARTINEZ

NICOLE SOHN, *et al.*,

     *Plaintiffs*,

v.

CITY OF KEY WEST,

     *Defendant*.

_____/

**<u>PLAINTIFFS' RESPONSE IN OPPOSITION TO
DEFENDANT'S MOTION TO DISMISS</u>**

Because Plaintiffs' Complaint pleads facts which establish a First Amendment violation, the Court should deny the City's Motion to Dismiss.

**INTRODUCTION**

This is a First Amendment *selective enforcement* case in which the City of Key West violated Plaintiffs' free speech rights by selectively enforcing the City's Historic District regulations against Plaintiffs. Indeed, by prohibiting Plaintiffs' rainbow picket display—a political protest against the City's removal of rainbow crosswalks—while simultaneously ignoring other noncompliant properties that had different content or expressed different messages, the City engaged in prohibited content and viewpoint discrimination in violation of the First Amendment.

Despite the City's instance otherwise, this is not a First Amendment *retaliation* case. The City's Motion to Dismiss (ECF No. 13) relies entirely on inapposite retaliation case law to argue that Plaintiffs' purported failure to plead an "adverse act" warrants dismissal. But an "adverse act" is an element of *retaliation*; it has no place in the law governing selective enforcement.

Because Plaintiffs plausibly allege the City selectively enforced its regulations based on the content and viewpoint of Plaintiffs' rainbow picket display, Plaintiffs have adequately stated a claim for selective enforcement in violation of the First Amendment. The City's misguided Motion should be denied.

**FACTUAL ALLEGATIONS**

Plaintiffs own a house in in Key West's Historic District, where they live. (Compl. ¶ 7, ECF No. 1). In 2025, The Key West City Commission voted to accede to the mandate of Governor DeSantis's administration that all localities statewide remove colorful markings and artwork on crosswalks and sidewalks. (*Id.* ¶ 2). Key West's rainbow crosswalks celebrating the LGBTQ+

1

community were painted over on September 8 or 9, 2025. (*Id.* ¶ 19). Plaintiffs painted in rainbow colors six fence pickets in front of their house and six pickets on the side of their house, in protest of the City's decision to remove the rainbow crosswalks. (*Id.* ¶¶ 20–21).

On December 20, 2025, Plaintiffs received a "Good Neighbor Courtesy Notice" from a City code compliance officer requesting that they return the fence to the City's Historic Architectural Review Commission's approved color or obtain HARC approval. (*Id.* ¶¶ 25–26). The only HARC-approved color for wooden fences is white. (*Id.* ¶ 14). On December 29, 2025, Plaintiffs accepted the City's invitation to seek HARC approval, applying for a permit as instructed by City staff. (*Id.* ¶ 27). On February 5, 2026, the City again informed Plaintiffs that their rainbow fence did not comply with HARC guidelines; this time with a "Notice of Code Violation." (*Id.* ¶ 28). The Notice gave Plaintiffs 30 days to take corrective action and stated that failure to correct the violation may result in a fine of up to $250 per day. (*Id.* ¶ 29–30). Plaintiffs again sought HARC review for their rainbow picket display. (*Id.* ¶¶ 31). But to Plaintiffs' knowledge, HARC never acted on their requests. (*Id.* ¶ 32).

On March 25, a City code compliance officer told Ms. Sohn that if the display was not removed by the next day, Plaintiffs would incur a $250 fee. (*Id.* ¶ 33). The next day, Plaintiffs removed their protest display by painting it over in white. (*Id.* ¶ 34).

The City has failed to enforce its Historic District regulations against a wide array of other violations of similar fence-color and exterior-element rules. (*Id.* ¶¶ 36–47). But the City *has* enforced those rules against most, if not all, of the many rainbow picket displays in the Historic District erected to protest the rainbow crosswalks' removal. (*Id.* ¶ 35).

**STANDARD OF REVIEW**

To survive a motion to dismiss for failure to state a claim, a complaint must include "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A "claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A court evaluating a motion to dismiss takes the plaintiff's factual allegations as true and construes them in the light most favorable to the plaintiff. *Hunt v. Aimco Props., L.P.*, 814 F.3d 1213, 1221 (11th Cir. 2016).

**GOVERNING LAW**

The First Amendment prohibits government regulation "abridging the freedom of speech."

2

"Under that Clause, a government, including a municipal government vested with state authority, 'has no power to restrict expression because of its message, its ideas, its subject matter, or its content.'" *Reed v. Town of Gilbert*, 576 U.S. 155, 163 (2015) (quoting *Police Dep't of Chicago v. Mosley*, 408 U.S. 92, 95 (1972)).

Government regulation of speech is content-based if a law applies to particular speech because of the topic discussed or the idea or message expressed. *Id.* "Any restriction on expressive activity because of its content would completely undercut the 'profound national commitment'" to the principles embodied in the First Amendment. *Id.* (quoting *New York Times Co. v. Sullivan*, 376 U.S. 254, 270 (1964)). "Limiting speech based on its 'topic' or 'subject' favors those who do not want to disturb the status quo. Such regulations may interfere with democratic self-government and the search for truth." *Id.* at 174 (Alito, J., concurring). Content-based regulations of expression are subject to strict scrutiny. *Otto v. City of Boca Raton*, 981 F.3d 854, 861 (11th Cir. 2020).

Viewpoint discrimination—a subset of content-based discrimination "because of the speaker's specific motivating ideology, opinion, or perspective"—is also subject to strict scrutiny and presumptively unconstitutional. *Rosenberger v. Rector & Visitors of Univ. of Va.*, 515 U.S. 819, 820 (1995); *Honeyfund.com Inc. v. Governor of Fla.*, 94 F.4th 1272, 1277 (11th Cir. 2024) (explaining that "penaliz[ing] certain viewpoints" is "the greatest First Amendment sin").

A constitutional violation occurs when a facially neutral law or policy is selectively enforced. *See Thomas v. Chicago Park Dist.*, 534 U.S. 316, 375 (2002) (discussing how "granting waivers [of ordinance requirements] to favored speakers (or, more precisely, denying them to disfavored speakers) would of course be unconstitutional"). A selective enforcement claim requires a plaintiff to demonstrate that they were "singled out for prosecution although others similarly situated, who have committed the same acts, have not been prosecuted." *Sheets v. Jimenez*, No. 2:24-cv-704, 2025 WL 807345, at *2 (M.D. Fla. Mar. 13, 2025) (quotation omitted).

## ARGUMENT

Plaintiffs allege the City engaged in First Amendment content and viewpoint discrimination by selectively enforcing its Historic District regulations. (Compl. ¶¶ 51–58). The City selectively enforced an ordinance regarding the appearance of wooden fences to silence Plaintiffs' speech based on its content and because the speech expressed a viewpoint the City disapproved of. (*Id.*). The City forced Plaintiffs to refrain from engaging in their preferred form of protest. (*Id.* ¶¶ 3–4, 20–21). Plaintiffs were made to remove their expressive rainbow display to

3

avoid fines. (*Id.* ¶¶ 30, 34). This prima facie violates Plaintiffs' First Amendment rights.

The City's Motion contains several errors,[1] the most egregious being that it invents a new element of a content and viewpoint discrimination claim. The City mistakenly attempts to impose an element of First Amendment *retaliation* cases—an adverse act—to this case. (Motion at 7–9). But Plaintiffs do not allege First Amendment retaliation, and thus an adverse act is not required for Plaintiffs to state a claim for relief.

Instead, the only requirement Plaintiffs must show to state a claim is that they were singled out for prosecution while similarly situated individuals were not. Plaintiffs more than meet their burden and the Motion must be denied.

### A. Plaintiffs state a claim for selective enforcement.

A selective enforcement claim requires a plaintiff to demonstrate they were "singled out for prosecution although others similarly situated, who have committed the same acts, have not been prosecuted." *Sheets,* 2025 WL 807345 at *2.

Plaintiffs have plausibly alleged that similarly situated individuals were not subject to code enforcement. Plaintiffs list numerous examples of unenforced violations that suggest enforcement against Plaintiffs was based on the content and viewpoint of their expression. (Compl. ¶¶ 36–47). By neglecting to enforce against similarly situated residents while at the same time enforcing against the Plaintiffs, "the City has imposed a differential burden upon speech because of its content." *Kennedy v. Avondale Ests.*, 414 F. Supp. 2d 1184, 1212 (N.D. Ga. 2005) (finding a First Amendment violation due to selective enforcement of a local sign ordinance). Accordingly, Plaintiffs state a claim.

### B. Defendant's Motion to Dismiss misconstrues the facts and the law.

The City relies entirely on First Amendment *retaliation* caselaw to support its baseless argument that a violation notice is not enough. (Motion at 7–9). This is wrong on the facts and the law.

---

[1] The City argues that the Notice of Code Violation is incorporated by reference and should be considered at this stage. (Motion at 6). The incorporation-by-reference doctrine permits a court to "consider outside documents *attached to a defendant's motion to dismiss*" when certain circumstances apply. *Edwards v. Dothan City Schs.*, 82 F.4th 1306, 1311 (11th Cir. 2023) (emphasis added). The City failed to attach the Notice or any other document to its Motion. Because no documents are attached to the Motion, there are no documents outside the Complaint to consider. This request must therefore be ignored.

*First*, the facts. The City contends that its only actions to restrict Plaintiffs' First Amendment protected speech were "the mere issuance of a courtesy notice and a notice violation, without more," and as such, no First Amendment violation occurred. (Motion at 1 ¶ 1, 7). This assertion belies the well-pleaded facts in the Complaint.

To wit, Plaintiffs recount how a City code compliance officer told Ms. Sohn that if the display was not removed by the next day, Plaintiffs would incur a $250 fee. (Compl. ¶ 33). Contrary to the City's minimization of its violation of Plaintiffs' constitutional rights, the City did more than "merely advise[] the Plaintiffs of the existence of a potential code violation," (Motion at 8)—it threatened Plaintiffs with an imminent penalty.

After this threat, Plaintiffs removed their rainbow picket display. (Compl. ¶ 34). This removal—a clear "self-censorship" of expression "to avoid enforcement consequences"— unequivocally constitutes an injury under the First Amendment. *Wilson v. State Bar of Ga.*, 132 F.3d 1422, 1428 (11th Cir. 1998).

Even without the self-censorship, the notices are enough. Courts in this Circuit have repeatedly recognized that a government restricts speech when it issues a notice of a local code violation. In *Bee's Auto, Inc. v. City of Clermont*, the City of Clermont claimed that the plaintiff had not suffered any injury because the city had not yet called the plaintiff to an administrative hearing or subjected the plaintiff to any penalty or fine. 8 F. Supp. 3d 1369, 1378 (M.D. Fla. 2014), *aff'd*, No. 15-10212 (11th Cir. Sept. 3, 2015). The court found that the plaintiff *had* suffered an injury because the city had issued a violation notice. *Id.* at 1379. The court elaborated: "A plaintiff claiming a violation of the exercise of his constitutional rights need not show that he has been subject to actual prosecution or penalty . . . ." *Id.* at 1378. No additional enforcement measure beyond a violation notice was required for the court in that case to find the plaintiff suffered content-based discrimination. *Id.* at 1383.

Like the plaintiff in *Bee's Auto*, Plaintiffs need not subject themselves to prosecution or be assessed fines before they can sue for a First Amendment violation. Rather, they only need to allege "(1) an actual threat of prosecution was made; (2) prosecution is likely; or (3) a credible threat of prosecution exists based on the circumstances." *Id.* at 1378–79 (citing *GeorgiaCarry.Org, Inc. v. Georgia*, 687 F.3d 1244, 1252 (11th Cir. 2012)).

Here, the City made at least two actual threats of prosecution; first with the Good Neighbor Courtesy Notice, and then again with the Notice of Code Violation. (Compl. ¶¶ 25–30). There was

a credible threat of code enforcement based on the City's escalation from a Good Neighbor Courtesy Notice to a Notice of Code Violation, the City's pattern of commencing enforcement against most if not all rainbow fences in the Historic District, and the language of the two notices themselves. (*Id.* ¶¶ 25–35).

Plaintiffs need not wait for a code enforcement hearing or until after fines are assessed to assert their First Amendment rights. The Notice of Code Violation and Plaintiffs' resulting self-censorship suffice. *Wilson*, 132 F.3d at 1428; *Bee's Auto, Inc.*, 8 F. Supp. 3d at 1379–80; *cf. Beaulieu v. City of Alabaster*, 454 F.3d 1219, 1226 (11th Cir. 2006). Plaintiffs' First Amendment rights were violated when they were subjected to the unconscionable choice between silencing their protest to conform with the City's selective code enforcement or face financial repercussions. Plaintiffs therefore state a claim.

*Second*, the law. A retaliation claim is distinct from a content or viewpoint discrimination claim. "To state a retaliation claim, the commonly accepted formulation requires that a plaintiff must establish first, that his speech or act was constitutionally protected; second, that the defendant's retaliatory conduct adversely affected the protected speech; and third, that there is a causal connection between the retaliatory actions and the adverse effect on speech." *Bennett v. Hendrix*, 423 F.3d 1247, 1250 (11th Cir. 2005), *abrogated in part on other grounds by Pearson v. Callahan*, 555 U.S. 223 (2009).

The City misconstrues Plaintiffs' claim as a First Amendment retaliation claim and erroneously relies on retaliation cases to argue that Plaintiffs have failed to plead an "adverse act." (Motion at 7–9). The City argues that its conduct as alleged in the Complaint does not constitute an adverse act under the First Amendment, does not impose more than a de minimis inconvenience, and would not likely deter a person of ordinary firmness from exercising their First Amendment rights. (*Id.* (citing four retaliation cases: *Bennett*, 423 F.3d 1247; *Bethel v. Town of Loxley*, 221 F. App'x 812 (11th Cir. 2006); *Frankel v. Town of Bay Harbor Islands*, No. 06-23109-CIV, 2007 WL 9709777 (S.D. Fla. Apr. 16, 2007); and *Volk v. Heydt*, No. CIV. A. 96-5239, 1997 WL 27100 (E.D. Pa. 1997))). These concepts may all be relevant to proving a retaliation claim, but they are irrelevant to the claim Plaintiffs actually allege.

While the City asserts that "an adverse act under the First Amendment [is] a necessary prerequisite to state a valid First Amendment claim *regardless of the theory asserted*," (Motion at 7–9 (emphasis added)), the City is wrong. The City cites no cases requiring a content or viewpoint

discrimination plaintiff to show an "adverse act"—nor can it. The City fails to understand that the concept of an "adverse act" is specific to retaliation cases and cannot logically be applied to selective enforcement cases. Whereas retaliation involves actions taken against an individual as payback for engaging in protected speech—such as intimidation tactics through a "prolonged and organized campaign of harassment," *see Bennett*, 423 F.3d at 1254—selective enforcement involves unequal enforcement of an otherwise facially neutral law by giving similarly situated violators a "free pass" because the content or viewpoint of their expression is more favored, *see Kennedy*, 414 F. Supp. 2d at 1216.

In sum, because the City misconstrues Plaintiffs' claim as a First Amendment retaliation claim, its arguments for dismissal are meritless.

## CONCLUSION

For the foregoing reasons, the Court should deny the City's Motion to Dismiss.

Respectfully submitted July 6, 2026,

/s/ *Nicholas L.V. Warren*

| | |
|---|---|
| Nicholas L.V. Warren (FBN 1019018) | Reid Levin (FBN 1038933) |
| Michelle M. Morton (FBN 81975) | **Reid Levin, PLLC** |
| Samantha J. Past (FBN 1054519) | P.O. Box 880682 |
| Daniel B. Tilley (FBN 102882) | Boca Raton, FL 33488 |
| **ACLU Foundation of Florida** | (561) 866-6089 |
| 4343 West Flagler Street, Suite 400 | reid@reidlevinpllc.com |
| Miami, FL 33134 | |
| (786) 363-1769 | Ashley N. Sybesma (FBN 22059) |
| nwarren@aclufl.org | Wayne LaRue Smith (FBN 31410) |
| mmorton@aclufl.org | **The Smith Law Firm** |
| spast@aclufl.org | 509 Whitehead Street |
| dtilley@aclufl.org | Key West, FL 33040 |
| | (305) 296-0029 |
| | ashley@thesmithlawfirm.com |
| | wsmith@thesmithlawfirm.com |

*Counsel for Plaintiffs*

7